IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ERIC NELS YERKES<br><br>      Plaintiff<br><br>    v.<br><br>CESSNA AIRCRAFT COMPANY,<br><br>UNDERWRITERS AT LLOYD'S OF LONDON,<br><br>FIRST LINCOLN HOLDINGS, LLC,<br><br>RESOLUTE MANAGEMENT SERVICES LIMITED,<br><br>EQUITAS REINSURANCE LIMITED,<br><br>EQUITAS LIMITED,<br><br>EQUITAS INSURANCE LIMITED,<br><br>and<br><br>DOE INSURANCE COMPANY #1-100<br><br>      Defendants | CIVIL ACTION<br><br>DOCKET NO.<br><br>***Jury Trial Demanded*** |

Plaintiff, Eric Nels Yerkes ("Plaintiff" and/or "Yerkes"), by way of this Complaint against the above-named Defendants, Cessna Aircraft Company, Underwriters at Lloyd's of London, First Lincoln Holdings, LLC, Resolute Management Services Limited, Equitas Reinsurance Limited, Equitas Limited, Equitas Insurance Limited, and Doe Insurance Company #1-100 (collectively, "Defendants"), says:

## STATEMENT OF THE CASE

1.      In 1981, Plaintiff survived an airplane crash into the Grand Canyons that left him, severely and permanently, injured.   In April 1986, he settled a lawsuit against the aircraft manufacturer for certain losses he suffered in the plane crash for a modest cash payment and a $6 million *plus* structured settlement that was funded by an annuity issued by Executive Life Insurance Company of New York ("ELNY").

2.      Despite its deteriorating financial condition, ELNY, operating under the control of the New York Liquidation Bureau since 1991, met its structured settlement payment obligations to Plaintiff up to and until the insurance company's ultimate restructure and liquidation, which occurred on August 8, 2013.  As of that date, ELNY calculated the present value of Plaintiff's annuity contract to be $2,734,238, reduced his scheduled benefits by 44%, and capped his recovery at no more than $500,000, robbing him of the benefit of his bargain under the settlement agreement.

3.      As a consequence of these contractual breaches, Defendants are liable for Plaintiff's annuity shortfall payments resulting from the liquidation of ELNY.

## PARTIES

4.      Plaintiff is an adult individual with an address at 21 Jacqueline Place, Sewell, NJ 08080.

5.      Defendant, Cessna Aircraft Company ("Cessna"), is the successor by merger to The Cessna Aircraft Company.  Cessna is a corporation organized and existing under the laws of the State of Kansas, which is registered as a foreign for profit entity in New Jersey, with a principal place of business at 40 Westminster Street, Providence, RI 02903.

4816-9222-1208.3

6.     Defendant, Underwriters at Lloyd's of London ("Lloyd's"), is an insurance market located in London, the members of which underwrite insurance policies, with a principal place of business at One Lime Street, London EC3M 7HA.

7.     Defendant, First Lincoln Holdings, LLC ("First Lincoln"), formerly known as First Lincoln Holdings, Inc., formerly known as First Executive Corporation ("FEC"), is a limited liability company organized and existing under the laws of the State of Delaware, with an address at 1219 West Street, Wilmington, DE 19801.  First Lincoln is the successor by name change to First Lincoln Holdings, Inc. and FEC.

8.     Defendant, Resolute Management Services Limited ("RMSL"), formerly known as Equitas Management Services Limited, is a limited company registered in England and Wales and claims manager for the Equitas Group with an address at London Underwriting Centre, 6th Floor, 3 Minster Court, Mincing Lane, London EC3R 7DD.

9.     Defendant, Equitas Reinsurance Limited ("ERL"), is a limited company registered in England and Wales and a wholly-owned subsidiary of EHL (defined below) that reinsured all non-life liabilities that had accumulated in the syndicates at Lloyd's on policies written from the 1930s up to and including 1992 with an address at London Underwriting Centre, 6th Floor, 3 Minster Court, Mincing Lane, London EC3R 7DD.

10.    Defendant, Equitas Limited ("EL"), is a limited company registered in England and Wales and a wholly-owned subsidiary of ERL to which certain ERL liabilities were retroceded with an address at London Underwriting Centre, 6th Floor, 3 Minster Court, Mincing Lane, London EC3R 7DD.

11.    Defendant, Equitas Insurance Limited ("EIL"), is a limited company registered in England and Wales and ultimate transferee of the 1992 and prior non-life business of members

and former members of Lloyd's with an address at London Underwriting Centre, 6th Floor, 3 Minster Court, Mincing Lane, London EC3R 7DD.  ERL, EL, EIL, and RMSL collectively are referred to herein as the "Equitas Group."

12.    Defendants, Doe Insurance Company #1-100, are insurance companies having liability to Plaintiff in connection with his annuity contract.

## JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction of this lawsuit pursuant to 28 U.S.C.A. §1332 insofar as the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States and foreign countries.

14.    Venue in this District is proper under 28 U.S.C.A. §1391(b) in that the events giving rise to this claim occurred or the property that is the subject of the action is situated within the boundaries of this District.

## FACTS

15.    As a result of the very serious, very painful, and permanent injuries he sustained in the plane crash on August 18, 1981, Plaintiff pursued and ultimately settled claims against the aircraft manufacturer, Cessna, and its insurer, Lloyd's, resulting in a $125,000 cash recovery and structured settlement that is evidenced, in part, by a Release and Indemnity Agreement and Assignment Agreement dated April 1, 1986 (collectively, the "Settlement Documents").  A true and correct copy of an unexecuted version of the Settlement Documents is attached hereto as Exhibit A.  Plaintiff does not have in his possession, custody, or control executed copies of the Settlement Documents.

16.    Under the Settlement Documents, the structured settlement was comprised of guaranteed payments totaling $6.2 million through age 59, life-contingent payments totaling

4

$468,000 through age 59, and life-contingent payments beginning at age 60 for life – all of which were to be paid in accordance with a schedule of payments attached thereto as "Exhibit A."

17.     At the time of settlement, "The Cessna Aircraft Company," the named defendant and an identified releasee, was a defunct company.  About a month before entering into the contract, The Cessna Aircraft Company merged into Cessna on March 3, 1986 and ceased to exist.

### The ELNY Annuity Contract & Assignment

18.     An annuity was purchased from ELNY to fund the structured settlement payments (ELNY Annuity Contract #N25966328A).  It was purchased by Cessna and/or Lloyd's for the express benefit of Plaintiff.

19.     Pursuant to the Assignment Agreement, Lloyd's (but not Cessna) purported to make a "qualified assignment" of its liability for the ELNY issued annuity to an entity identified as "First Executive Corporation, a California corporation," which is a non-existent entity.

20.     Unbeknownst to Plaintiff, FEC, a Delaware corporation, was grossly undercapitalized and insolvent for many years, including as early as April 1986, and ceased to operate in its own name after filing for bankruptcy in 1991.

21.     FEC was renamed as First Lincoln Holdings, Inc.  In 2007, First Lincoln Holdings, Inc. was renamed as First Lincoln.  Each surviving entity assumed the liabilities of FEC, including the obligations under the Assignment and/or by reason of its ownership of Plaintiff's annuity contract.

4816-9222-1208.3

22.     Alternatively, Lloyd's purported assignment of ownership of the annuity contract to FEC is void and/or fails to meet the requirements of a "qualified assignment" under Internal Revenue Code 130.

*The Restructure & Liquidation of ELNY*

23.     On April 16, 2012, the Supreme Court of the State of New York, Nassau County ("Receivership Court") entered an Order finding ELNY to be insolvent and approved a Restructuring Agreement in connection with the liquidation and restructuring of ELNY.

24.     By Order of the Receivership Court, the Superintendent of Financial Services of the State of New York, as Receiver, was directed to liquidate ELNY's business and affairs in accordance with New York Insurance Law and in substantially the manner provided in the Restructuring Agreement.

25.     The Liquidation Date of ELNY was the closing date of the Restructuring Agreement, which occurred on August 8, 2013.

26.     Substantially all of ELNY's remaining assets were transferred to Guaranty Association Benefits Company ("GABC"), a newly created not-for-profit captive insurance company owned by the Participating Guaranty Associations.

27.     Since the Liquidation Date, GABC has been responsible for managing such assets and making payments to contract owners, payees and beneficiaries.

28.     The Receiver's records show or will show that Plaintiff received less than the full amount of his annuity that was present valued at $2,734,238.

*Lloyd's "Reinsurance to Close"& Shortfall Obligations*

29.     As noted above, Lloyd's is not an insurance company, but rather, an insurance market of underwriters, or "members", both individuals and corporations that underwrite

6

insurance business, that sets rules under which the members operate and offers centralized administrative services to those members.

30.     Membership in a Lloyd's syndicate occurs in one-year terms.  For any given year, the syndicate's members are paid any underwriting (and investment) profit in proportion to their participation in the syndicate and, conversely, required to reimburse the syndicate for their share of any loss.  These profits and losses are declared annually by use of an accounting practice known as "reinsurance to close" ("RITC").

31.     Under RITC, the syndicate buys a reinsurance policy to pay any future claims where the premium is equal to the amount of the reserve for that year.

32.     Under this scheme, unprecedented asbestosis losses of the early 1990s exceeded set reserves and threatened the continued viability of the market.  To address these losses, the market restructured in 1996 such that liability for all pre-1993 business was transferred by RITC to the Equitas Group at an enormous cost and personal loss for many members.

33.     The reinsurance contract that established the Equitas Group, known as the Reinsurance and Run-Off Contract (the "Contract"), (i) indemnified the Names (as defined therein) for liabilities under insurance policies and reinsurance contracts, (ii) but did not affect the liability of the Names to their clients, and (iii) did not create any rights on behalf of third parties; (iv) in addition, the Contract provided for proportionate payment of claims should the Equitas Group have insufficient assets to pay all claims; (v) the Contract granted full authority to the Equitas Group to manage claims and related services, including the authority to (1) negotiate, contest and settle claims with cements, insureds, and claimants; (2) hire and fire adjusters, attorneys, and consultants; (3) pursue subrogation and salvage; (4) enter into commutations and other market arrangements; and (5) collect and apply reinsurance.

4816-9222-1208.3

34.     The reinsuring agreement itself as well as the conduct of the reinsurer demonstrate that the Equitas Group may be held to be a privity to the action, such that it is appropriate to "pierce" the "technical veil of reinsurance."

COUNT I
BREACH OF CONTRACT
PLAINTIFF V. CESSNA

35.     Plaintiff incorporates herein by reference the allegations set forth in the foregoing paragraphs above as though set forth at length herein.

36.     On or about April 1, 1986, Plaintiff and Cessna executed the Settlement Documents whereby Cessna agreed to make a payment of $125,000 and periodic payments as required under the structured settlement to Plaintiff in release of his personal injury claims against The Cessna Aircraft Company.

37.     Cessna breached its duty to make the periodic payments as required under the Settlement Documents, at law, and in equity.

38.     Plaintiff has performed all conditions precedent under the Settlement Documents.

39.     As a result of Cessna's breach of the Settlement Documents, Plaintiff has suffered damages in the amount in excess of $2 million.

WHEREFORE, Plaintiff, Eric Nels Yerkes, demands judgment in his favor and against Defendant, Cessna Aircraft Company, in an amount in excess of $2 million, plus pre-judgment and post-judgment interest, costs of suit and such other relief as the Court deems just and proper.

COUNT II
BREACH OF CONTRACT
PLAINTIFF V. FIRST LINCOLN

40.     Plaintiff incorporates herein by reference the allegations set forth in the foregoing paragraphs above as though set forth at length herein.

8

41.     On or about April 1, 1986, Plaintiff and Lloyd's executed the Settlement Documents whereby Lloyd's agreed to make a payment of $125,000 and periodic payments as required under the structured settlement to Plaintiff in release of his personal injury claims against The Cessna Aircraft Company.

42.     First Lincoln is the owner of Plaintiff's annuity and is responsible to Plaintiff for any shortfall payments due under the annuity contract.

43.     First Lincoln breached its duty to make the periodic payments as required under the Settlement Documents, under the annuity contract, at law, and in equity.

44.     Plaintiff has performed all conditions precedent under the Settlement Documents and annuity contract.

45.     As a result of First Lincoln's breach of the Settlement Documents and annuity contract, Plaintiff has suffered damages in the amount in excess of $2 million.

WHEREFORE, Plaintiff, Eric Nels Yerkes, demands judgment in his favor and against Defendant, First Lincoln Holdings, LLC, in an amount in excess of $2 million, plus pre-judgment and post-judgment interest, costs of suit and such other relief as the Court deems just and proper.

## COUNT III
## BREACH OF CONTRACT
## PLAINTIFF V. LLOYD'S

46.     Plaintiff incorporates herein by reference the allegations set forth in the foregoing paragraphs above as though set forth at length herein.

47.     On or about April 1, 1986, Plaintiff and Lloyd's executed the Settlement Documents whereby Lloyd's agreed to make a payment of $125,000 and periodic payments as

4816-9222-1208.3

required under the structured settlement to Plaintiff in release of his personal injury claims against The Cessna Aircraft Company.

48. Lloyd's breached its duty to make the periodic payments as required under the Settlement Documents, at law, and in equity.

49. Alternatively, and/or in addition to First Lincoln's liability, the purported assignment of ownership of the annuity contract to FEC is void and/or fails to meet the requirements of a "qualified assignment" under Internal Revenue Code 130.

50. Plaintiff has performed all conditions precedent under the Settlement Documents.

51. As a result of Lloyd's breach of the Settlement Documents, Plaintiff has suffered damages in the amount in excess of $2 million.

WHEREFORE, Plaintiff, Eric Nels Yerkes, demands judgment in his favor and against Defendant, Underwriters at Lloyd's of London, in an amount in excess of $2 million, plus pre-judgment and post-judgment interest, costs of suit and such other relief as the Court deems just and proper.

COUNT IV
BREACH OF CONTRACT
PLAINTIFF V. THE EQUITAS GROUP

52. Plaintiff incorporates herein by reference the allegations set forth in the foregoing paragraphs above as though set forth at length herein.

53. On or about April 1, 1986, Plaintiff and Lloyd's executed the Settlement Documents whereby Lloyd's agreed to make a payment of $125,000 and periodic payments as required under the structured settlement to Plaintiff in release of his personal injury claims against The Cessna Aircraft Company.

10

54.    Under the terms of the Contract and by virtue of the powers extended to the Equitas Group to control and direct the adjustment and settlement of claims arising under pre-1993 Lloyd's policies, such as The Cessna Aircraft Company's policy, the Equitas Group assumed all of the obligations of a primary insurer and should not be allowed to circumvent its responsibilities as a matter of law and equity.

55.    Having assumed the obligations of Lloyd's, the Equitas Group breached its duty to make the periodic payments as required under the Settlement Documents, at law, and in equity.

56.    Alternatively, and/or in addition to First Lincoln's liability, the purported assignment of ownership of the annuity contract to FEC is void and/or fails to meet the requirements of a "qualified assignment" under Internal Revenue Code 130.

57.    Plaintiff has performed all conditions precedent under the Settlement Documents.

58.    Plaintiff is the intended third party beneficiary to the Settlement Documents and/or the ELNY annuity contract.  As a creditor beneficiary, Plaintiff is entitled to enforce Defendants' payment obligations under said instruments.

59.    As a result of the Equitas Group's breach of the Settlement Documents, Plaintiff has suffered damages in the amount in excess of $2 million.

WHEREFORE, Plaintiff, Eric Nels Yerkes, demands judgment in his favor and against Defendants, Resolute Management Services Limited, Equitas Reinsurance Limited, Equitas Limited, Equitas Insurance Limited, in an amount in excess of $2 million, plus pre-judgment and post-judgment interest, costs of suit and such other relief as the Court deems just and proper.

COUNT V
UNJUST ENRICHMENT
PLAINTIFF V. DEFENDANTS

60.     Plaintiff incorporates herein by reference the allegations set forth in the foregoing paragraphs above as though set forth at length herein.

61.     On or about April 1, 1986, Plaintiff, Cessna, and Lloyd's executed the Settlement Documents whereby Cessna and Lloyd's agreed to make a payment of $125,000 and periodic payments as required under the structured settlement to Plaintiff in release of his personal injury claims against The Cessna Aircraft Company.

62.     In releasing his personal injury claims against The Cessna Aircraft Company, Plaintiff conferred a valuable benefit on Cessna, its insurer, its assignee, and their reinsurers, such that the retention of such benefits without just compensation would be inequitable.

63.     The reasonable value of the benefit conferred upon Defendants is in excess of $2 million.

WHEREFORE, Plaintiff, Eric Nels Yerkes, demands judgment in his favor and against Defendants in an amount in excess of $2 million, plus pre-judgment and post-judgment interest, costs of suit and such other relief as the Court deems just and proper.

Respectfully submitted,

Oliver D. Griffin
Melissa A. Bozeman
Kutak Rock LLP
Two Liberty Place
50 S. 16th Street, Suite 28B
Philadelphia, PA 19102
Telephone: (215) 299-4384
Facsimile: (215) 981-0719

Dated: September 23, 2014.                    *Attorneys for Plaintiff*

12

# EXHIBIT A

## RELEASE AND INDEMNITY AGREEMENT

In consideration of payment of $125,000.00 cash, receipt of which is acknowledged by Eric N. Yerkes, and payment of periodic sums, the undersigned releases The Cessna Aircraft Company and its insurer, Lloyds of London and Certain London Insurance Companies (hereinafter Cessna and Lloyds), and all those related or that may be related to them, from all claims, demands and causes of action, known or unknown, arising out of a Grand Canyon Airlines plane crash occurring August 18, 1981.

In consideration for this Release and an Assignment Agreement, Cessna and Lloyds, in addition to payment of $125,000.00, agree to purchase an annuity from Executive Life Insurance Company of New York to fulfill their obligation to provide the following periodic payments (hereinafter "these periodic payments"):

$1,000/Month for life; 20 year guarantee

| | | |
|---|---|---|
| $ | 25,000 | payable in 5 years |
| $ | 40,000 | payable in 10 years |
| $ | 70,000 | payable in 15 years |
| $ | 125,000 | payable in 20 years |
| $ | 200,000 | payable in 25 years |
| $ | 350,000 | payable in 30 years |
| $ | 450,000 | payable in 35 years |
| $ | 800,000 | payable in 40 years |
| $ | 900,000 | payable in 45 years |
| $ | 1,200,000 | payable in 50 years |
| $ | 2,000,000 | payable in 55 years |

It is understood and agreed that Eric Yerkes has no interest of any kind

in this annuity. Payments will be mailed directly to him by Executive Life Insurance Company or its designee.

It is also understood and agreed that Cessna and Lloyds will assign their obligation for these periodic payments to First Executive Corporation as set forth in the Assignment Agreement. This assignment is accepted by Eric Yerkes, without right of rejection, in full release of Cessna and Lloyds with respect to these periodic payments. He acknowledges that once this assignment is made Cessna and Lloyds are released from the obligation to make such payments.

It is further understood and agreed this is a full and final release and discharge of all claims, demands and causes of action in any way arising out of injuries or damages, known or unknown, discovered or undiscovered, physical or mental, to Eric Yerkes as a result of the August 18, 1981, incident. It is entered into as a compromise of litigation and is in no way to be construed as an admission of liability on the part of Cessna and Lloyds.

The sum of $125,000.00 and these periodic payments are the sole consideration for this release and are contractual and not mere recitals. All understandings and agreements between the parties are expressed in and merged into this release.

As further consideration for payment of $125,000.00, plus these periodic payments, Eric Yerkes agrees in the event of breach of this agreement or in the event of further claims by him or anyone claiming for or through him, under either Arizona or any other law arising out of the August 18, 1981, incident, that he will indemnify and hold Cessna and Lloyds harmless for such other claims, including court costs and attorneys' fees, and to pay any judgment or liens that may be entered or asserted against them.

-2-

It is further understood and agreed this release and consideration are predicated upon the following representations and warranties by Eric Yerkes:

1.   He is single and was single as of 1981;

2.   He has reached the age of majority;

3.   He has read and understands this release;

4.   He is voluntarily signing this release with the knowledge he is compromising any and all claims he may have;

5.   He has taken into account not only ascertained injuries and damages but also the possibility some may be latent and that consequences not anticipated may result.  Likewise, he realizes some injuries may be permanent and that recovery may be uncertain;

6.   He relies upon his own judgment and that of his attorneys in executing this release and has not been influenced by representations, if any, made by those released or their agents;

7.   He is aware of no one having any claim for injuries or damages to him or through him as a result of the August 18, 1981, incident;

8.   He agrees to pay all legitimate liens and expenses for which he is responsible arising out of the August 18, 1981, incident and to hold harmless and indemnify the defendant and its insurers therefrom.

Eric N. Yerkes

-3-



EXHIBIT A

## SCHEDULE OF PAYMENTS

For Eric Yerkes:

$1,000/Month for life; 20 year guarantee

$    25,000   payable in  5 years

$    40,000   payable in 10 years

$    70,000   payable in 15 years

$   125,000   payable in 20 years

$   200,000   payable in 25 years

$   350,000   payable in 30 years

$   450,000   payable in 35 years

$   600,000   payable in 40 years

$   900,000   payable in 45 years

$ 1,200,000   payable in 50 years

$ 2,000,000   payable in 55 years

STATE OF ARIZONA   )
                         ) ss.
County of Maricopa   )

       On this _____ day of _____, 19__, before me, the undersigned Notary Public, personally appeared Eric N. Yerkes, known to me to be the persons whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purpose therein contained.

       IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

                                        _____
                                        Notary Public

Approved by:

Robert Begam

## ATTORNEY'S CERTIFICATION

       I, the undersigned, am the attorney for Eric Yerkes and have advised him regarding this release and have counseled him that by signing it and accepting the considerations set forth, he is releasing any and all claim for unknown losses that may develop in the future.

                                        _____
                                        Paul Anapol

17029LGE

-4-

ADDENDUM TO ERIC YERKES

RELEASE AND INDEMNITY AGREEMENT


Payment of $1,000 a month begins March 15, 1986.

The first lump-sum payment of $25,000 is payable February 15, 1991.

## ASSIGNMENT AGREEMENT

1.  In consideration of payment of a premium payment by Lloyds of London and Certain London Insurance Companies, ("Assignor") to FIRST EXECUTIVE CORPORATION, a California corporation ("Assignee"), Assignee assumes, and Assignor assigns to Assignee, the liability of Assignor to make periodic payments in the amounts and at the times set forth in the Schedule of Payments attached as Exhibit A, to Payee (or, in the event of Payee's death, to a Named Beneficiary) as damages for personal injury.  Payee agrees that, by reason of such assumption and assignment, Assignor is fully released from its liability to make all periodic payments. Assignee does not assume and Assignor does not assign any obligation or liability except the liability to make periodic payments pursuant to a Release and Indemnity Agreement dated _____, 19___, a copy of which is attached. Assignor, Assignee and Payee agree that payments made to Payee, shall, to the extent of such payments, discharge Assignee's obligation to make the payments set forth in Exhibit A.  This Agreement ("Agreement") is intended to constitute a qualified assignment within the meaning of Section 130(c) of the Internal Revenue Code.

2.  Assignee guarantees periodic payments as set forth in Exhibit A will be made.  Payee may not accelerate, defer, increase, or decrease any payment set forth in Exhibit A.

3.  Payee shall not have, by reason of this Agreement, any right against Assignee other than the rights of a general creditor of Assignee.  This Agreement does not give Payee any lien, security interest, or other right in any asset of Assignee, or any asset held or acquired by Assignee in order to fund the obligation to make the payment set forth in Exhibit A.

4.  Assignee's obligation to make payments shall not be greater than Assignor's obligation to make such payments.  To the extent that Assignor's obligation

to make any payment (or any portion thereof) is invalid, unenforceable, or subject to any defense, Assignee's obligation shall be equally invalid, unenforceable, or subject to any defense.

5.   Assignor represents and warrants to Assignee that (i) Assignor incurred the liability to make the periodic payments as noted in the schedule attached, and (ii) such payments constitute damages on account of personal injury within the meaning of Sections 104 (1) (2) and 130(c) of the Internal Revenue Code.

6.   Each Party to this Agreement represents and warrants that it has the power and authority to enter into and perform this Agreement.

7.   This Agreement and a Release and Indemnity Agreement, between Assignor and Payee, constitute the entire agreement among Assignor, Assignee and Payee.

8.   This Agreement shall be governed by the laws of the state of California.

ENTERED into as of the ____ day of _____, 19____.

ASSIGNOR: Lloyds of London and
Certain London Insurance Companies

By: _____
Title:

ASSIGNEE: First Executive Corporation

By: _____
Title:

PAYEE

ERIC N. YERKES

3179-28/17022LGE

2