NOT FOR PUBLICATION                    [Dkt. Ents. 19, 29]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| ERIC NELS YERKES,<br><br>        Plaintiff,<br><br>              v.<br><br>CESSNA AIRCRAFT CO., et al.,<br><br>        Defendants. | Civil Action No. 14-cv-05925<br><br>OPINION |

Appearances:
Melissa A. Bozeman
Kutak Rock LLP
Two Liberty Place
50 South 16th Street
Suite 28B
Philadelphia, PA 19102

Oliver D. Griffin
Spector Gadon and Rosen, P.C.
1000 Lenola Road
P.O. Box 1001
Moorestown, NJ 08057
      Attorneys for Plaintiff
      Eric Nels Yerkes

Susan M. Kwiatkowski
Jeffrey W. Moryan
Connell Foley LLP
85 Livingston Avenue
Roseland, NJ 07068
      Attorneys for Defendant
      Cessna Aircraft Co.

Michael J. Miles
Brown & Connery, LLP
360 Haddon Avenue
Westmont, NJ 08108

Joseph L. Ruby
Lewis Baach PLLC
1899 Pennsylvania Avenue NW
Suite 600
Washington, DC 20006
    Attorneys for Defendants
    Certain Underwriters at Lloyd's London

**BUMB**, UNITED STATES DISTRICT JUDGE:

This matter comes before the Court upon two motions to dismiss filed by Defendant Cessna Aircraft Co. ("Cessna") and Defendants Certain Underwriters at Lloyd's London ("Lloyd's"). (Dkt. Ents. 19, 29.) Cessna and Lloyd's (collectively, the "Defendants") seek to dismiss Counts I, III, and IV of the Second Amended Complaint (the "Second Amended Complaint"), which, respectively, allege breach of contract against Cessna, breach of contract against Lloyd's,[1] and unjust enrichment against both Cessna and Lloyd's.[2] (Second Am. Compl. ¶¶ 32-38, 45-53, 54-57.)

## I.  Factual Background

On August 18, 1981, Plaintiff Eric Nels Yerkes (the "Plaintiff") sustained severe and permanent injuries in a plane crash that occurred near the Grand Canyon in Arizona. (Id. at

---

[1] Count III alleges breach of contract against Cessna's insurers, and Lloyd's underwrote 36.3787% of Cessna's insurance policy. (Id. at ¶¶ 8, 45-53.)

[2] Count IV also alleges unjust enrichment against both the policy's other underwriters and the structured settlement's asignee, neither of whom have entered an appearance. (Id. at ¶¶ 54-57.)

¶¶ 1, 13.) The plane in which Plaintiff was injured was manufactured by Cessna, whose insurance policy was underwritten by certain "companies participating in the London insurance market," including Lloyd's (collectively, Cessna's "Insurers"). (See id. at ¶¶ 7, 13.) Following the plane crash, Plaintiff filed suit against Cessna and its Insurers in Arizona federal court. (Id. at ¶ 1.) The parties resolved that suit by entering into a settlement agreement, the terms of which were embodied in a Release and Indemnity Agreement ("RIA"), as well as an Assignment Agreement, both of which are alleged by Plaintiff to be dated April 1, 1986. (Id. at ¶ 13.) Under the settlement agreement, Plaintiff was to receive a $125,000.00 lump-sum payout, as well as periodic payments throughout his lifetime, which were to be funded by an annuity carrying an ultimate value in excess of $6,000,000.00. (Id. at ¶¶ 13-14.) The annuity was to be purchased from Executive Life Insurance Company of New York ("ELNY") and assigned to First Executive Corporation ("FEC"). (See id. at Ex. A.) Plaintiff attached unexecuted and undated copies of the RIA and Assignment Agreement to his Second Amended Complaint but, as mentioned, Plaintiff avers that these documents evidence the settlement agreement.[3] (See id. at ¶ 13 & Ex. A.)

_____

[3] It is unclear what the basis is for Plaintiff's allegation that the documents are "dated April 1, 1986" (see id. at ¶ 13),

Specifically, the RIA provides that:

> In consideration of payment of $125,000.00 cash, receipt of which is acknowledged by [Plaintiff], and payment of periodic sums, [Plaintiff] releases [Cessna] and its [Insurers], and all those related or that may be related to them, from all claims, demands and causes of action, known or unknown, arising out of a Grand Canyon Airlines plane crash occurring August 18, 1981.
>
> In consideration for this Release and an Assignment Agreement, Cessna and [Lloyd's], in addition to payment of $125,000.00, agree to purchase an annuity from [ELNY] to fulfill their obligation to provide . . . periodic payments [to Plaintiff] . . . .
> . . .
> It is also understood and agreed that [Cessna] and [Lloyd's] will assign their obligation for these periodic payments to First Executive Corporation as set forth in the Assignment Agreement. This assignment is accepted by [Plaintiff] . . . **in full release of Cessna and [Lloyd's]** with respect to these periodic payments. [Plaintiff] acknowledges that once this assignment is made Cessna and [Lloyd's] are released from the obligation to make such payments.

---

since Plaintiff alleges that he does not possess fully-executed versions of the RIA and Assignment Agreement. Nor is he allegedly aware of whether the unexecuted versions attached to his Second Amended Complaint are the "final version[s] which [were] ultimately executed by the parties." (Id. at ¶ 13.) Nonetheless, Plaintiff relies upon these documents as evidencing the terms of the parties' settlement agreement. (See, e.g., id. at ¶¶ 13, 18-19.) To the extent Plaintiff argues that the terms of the unexecuted settlement documents do not reflect the entirety of the parties' agreement, this argument seems to be belied by the terms of the RIA and Assignment Agreement, as well as alleged conduct of the parties that is consistent with the terms of the unexecuted documents. (See, e.g., id. at Ex. A, p. 2 ("All understandings and agreements between the parties are expressed in and merged into this release."); id. at p. 7 ("This [Assignment] Agreement and a [RIA] . . . constitute the entire agreement among Assignor, Assignee and Payee."); id. at ¶¶ 1, 13, 18, 33, 40, 47, 55); see also Battaglia v. McKendry, 233 F.3d 720, 729 n.7 (3d Cir. 2000) ("[T]he standard merger clause causes prior negotiations and understandings to merge into and be extinguished by the subsequent agreement.").

4

(Second Am. Compl. Ex. A 1-2 (emphasis added).)

Attached, and incorporated by reference, to the RIA is the Assignment Agreement, which states:

> In consideration of payment of a premium payment by [Cessna's Insurers], ("Assignor") to [FEC], a California Corporation ("Assignee"), Assignee assumes, and Assignor assigns to Assignee, the liability of Assignor to make periodic payments in the amounts and at the times set forth in the Schedule of Payments attached as Exhibit A, to [Plaintiff] . . . . [Plaintiff] agrees that, by reason of such assumption and assignment, [Cessna's Insurers are] fully released from [their] liability to make all periodic payments.

(Id. at Ex. A, p. 6.) The Assignment Agreement purports to be a "qualified assignment" under Section 130(c) of the Internal Revenue Code. (See id. at ¶ 19 & Ex. A, p. 6.) While the Assignment Agreement and RIA attached to Plaintiff's Second Amended Complaint are unexecuted, Plaintiff, Cessna's Insurers, and FEC are all signatories to the Assignment Agreement, and Plaintiff is a signatory to the RIA. (Id. at Ex. A, pp. 3-4.)

Plaintiff alleges that Cessna and/or its Insurers purchased an annuity from ELNY. (Id. at ¶ 16.) Plaintiff received structured settlement payments pursuant to this annuity apparently from March 15, 1986 until August 8, 2013 (totaling at least $788,000 by this Court's calculation),[4] when ELNY underwent

---

[4] This amount is based upon the terms of the RIA but does not include the $125,000.00 lump sum payment that Plaintiff alleges he also recieved.

a restructuring and liquidation process. (Id. at ¶ 2; see also id. at ¶ 23.) ELNY's remaining assets were transferred to Guaranty Association Benefits Company ("GABC"), which has been responsible for managing assets and making payments on behalf of ELNY. (Id. at ¶¶ 26-27.) On October 13, 2014, GABC sent a letter to Plaintiff's New Jersey residence informing him that, due to the liquidation and restructuring of ELNY, Plaintiff's total payout on the annuity owned by FEC would be reduced by 43.54%, bringing Plaintiff's total future payout to $2,394,700. (See id. at ¶ 31 & Ex. B, p. 1.)

Plaintiff subsequently filed suit against Defendants, as well as First Lincoln Holdings, LLC, successor to First Executive Corporation ("FEC"), alleging claims for breach of contract and unjust enrichment. Specifically, Plaintiff alleges that, "[a]t the time of settlement, Cessna had an obligation to make a settlement payment and properly purchase an annuity contract to assume its obligation to make certain scheduled payments pursuant to a properly executed assignment." (Second Am. Compl. ¶ 17.) According to Plaintiff's Second Amended Complaint, both Cessna and its Insurers agreed to assign their obligation to make periodic payments to FEC, and that this assignment was a condition precedent to the release of Cessna and its Insurers' obligation to make those payments. (Id. at ¶ 18.) Plaintiff alleges, however, that FEC, which was

6

misidentified as a "California corporation" in the Assignment Agreement, was a non-existent and/or insolvent entity at the time of the settlement. (Id. at ¶¶ 18-19.) Moreover, Plaintiff alleges that the Assignment Agreement only purports to assign the Insurers' – not Cessna's – obligation to make periodic payments. (See id. at ¶ 19.) Thus, Plaintiff contends that Defendants breached the settlement agreement by failing to (1) properly purchase an annuity contract, (2) properly assign their obligations, and (3) make periodic payments to Plaintiff. (Id. at ¶¶ 36, 50, 52.)

Cessna and Lloyd's have both moved to dismiss the Second Amended Complaint in its entirety. (Dkt. Ents. 19, 29.)

## II.  Standard

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" in order to withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Claims are facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and "an unadorned, the-defendant-unlawfully-harmed-me accusation" will not survive a motion to dismiss. Id. at 663, 678. "[A] plaintiff's obligation to provide

7

the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

The district court "must accept as true all well-pled factual allegations as well as all reasonable inferences that can be drawn from them, and construe those allegations in the light most favorable to the plaintiff" when reviewing a plaintiff's allegations. Bistrian v. Levi, 696 F.3d 352, 358 n.1 (3d Cir. 2012). Only the allegations in the complaint, and "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case" are taken into consideration. Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citing Chester Cnty. Intermediate Unit v. Pa. Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990)). Furthermore, "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes" per Federal Rule of Civil Procedure 10(c), and "[w]hen a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." Creelgroup, Inc. v. NGS Am., Inc., 518 F. App'x 343, 347 (6th Cir. 2013); accord ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994); Gavornik v. LPL Fin. LLC, No. CIV. 14-955, 2014 WL 3844828, at *5 (D.N.J. Aug. 5, 2014); Goldenberg

v. Indel, Inc., 741 F. Supp. 2d 618, 624 (D.N.J. 2010). For that reason, dismissal of a complaint which relies on a settlement agreement is proper where its terms contradict the complaint's allegations. See, e.g., Snyder v. Everson, 237 F. App'x 734, 734-35 (3d Cir. 2007). Accordingly, the Court may consider the unexecuted RIA and Assignment Agreement attached to the Second Amended Complaint and relied upon by him.[5]

## III. Analysis

Before turning to Defendants' arguments, it is helpful to consider the nature and underlying purpose of the structured settlement arrangement entered into by Plaintiff, Cessna, and Lloyd's.[6] In "the typical personal-injury structured settlement . . . a tortfeasor's insurance company assigns to a structured-settlement company its liability to make the periodic payments to the plaintiff." Owen v. CNA Ins./Cont'l Cas. Co., 771 A.2d 1208, 1218 (N.J. 2001). In consideration for the assumption of liability, the insurance company pays a premium to a company specializing in structured settlements, the sum of which funds

---

[5] To the extent Plaintiff has a good faith belief that the terms of the unexecuted copies of the settlement documents materially differ from the terms of the governing agreements, then he must include such allegations in any amended complaint he seeks leave to file.

[6] This discussion is meant only to provide background information on the structured settlement agreement at issue here.

the purchase of an annuity that makes periodic payments to a beneficiary. Id. at 1217. If the transaction satisfies the requirements of Section 130 of the Internal Revenue Code, it is deemed a "qualified assignment" and the structured-settlement company may not have to report the lump sum as federal income until it received the annuity payments and it may then be entitled to an offsetting deduction for periodic payments made to the plaintiff.[7] Id. Annuities also may afford the beneficiary certain federal tax benefits. For instance, a personal injury plaintiff who chooses to receive a lump-sum payout may exclude that amount from his or her taxable income under Section 104 of the Internal Revenue Code, subject to certain restrictions;[8] any

---

[7] Accordingly, to the extent Plaintiff contends that Defendants' assignment to FEC is void for failure to meet the requirements of Section 130, such argument must be rejected. Section 130 does not affect the legal assignment of an obligation but rather concerns only the tax consequences of the transaction. See Owen, 771 A.2d at 1217-18.

[8] Under the current Internal Revenue Code, § 104(a)(2) excludes from gross income "the amount of any damages (other than punitive damages) received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal physical injuries or physical sickness." The requirements of § 104(a)(2) have been narrowed since the time at which the parties entered into their settlement agreement. See generally DANIEL W. HINDERT, ET AL., STRUCTURED SETTLEMENTS AND PERIODIC PAYMENT JUDGMENTS § 2.01 (Law Review Press 2015). For example, punitive damages no longer qualify for exclusion, and any injury or sickness damages must be physical in origin (i.e., emotional distress damages may not be excluded from gross income). Id. Thus, not all structured settlement or lump sum payment amounts necessarily qualify for tax exemption under current tax regulations.

return on an investment of this lump sum, however, is deemed taxable income. See, e.g., W. United Life Assur. Co. v. Hayden, 64 F.3d 833, 839-40 (3d Cir. 1995); see also HINDERT, ET AL., supra note 8. Through a structured settlement, on the other hand, the plaintiff receives periodic payments rather than a lump sum and thus the entirety of the payments are excludable as compensation on account of personal injury. Hayden, 64 F.3d at 839-40. As a result, a plaintiff ultimately may collect a greater monetary sum over time by choosing a structured settlement funded by an annuity, rather than a lump-sum payout. Here, Plaintiff and Defendants agreed to enter into a structured settlement agreement, as set forth in the RIA and accompanying Assignment Agreement, and Plaintiff received payments pursuant to this agreement for over 27 years. (Second Am. Compl. ¶ 2.)

In their motions to dismiss, Defendants argue that the Second Amended Complaint must be dismissed for failure to state a claim, as the allegations are directly contradicted by the terms of the RIA and Assignment Agreement. Specifically, Defendants contend that they fulfilled their obligations under the terms of the RIA and Assignment Agreement by making a lump-sum payment of $125,000.00, purchasing an annuity from ELNY, and assigning to FEC the obligation to make periodic payments. In exchange, Plaintiff agreed to release all claims against them arising out of the 1981 plane crash. As such, Defendants argue,

11

the Second Amended Complaint fails to state a claim for breach of contract. Defendants further argue that Plaintiff fails to state a claim for unjust enrichment because the parties' relationship is governed by a contract and, under that contract, neither Defendant received any benefit of which they were underserving. Finally, Defendants argue that the statute of limitations bars Plaintiff's claims. The Court addresses these arguments in turn below.

### A. Breach of Contract

First, Defendants argue that the Second Amended Complaint fails to adequately allege that Defendants breached the settlement agreement as a result of the 2013 reduction in Plaintiff's payout allegedly caused by ELNY's liquidation. To maintain a claim for breach of contract under New Jersey law,[9] "a

---

[9] This Court shall apply New Jersey law, as the parties do not appear to contest its application to Plaintiff's claims. (See, e.g., Br. in Supp. of Cessna's Mot. to Dismiss 8; Br. in Supp. of Pl.'s Opp'n to Cessna's Mot. to Dismiss 5; Br. in Supp. of Lloyd's Mot. to Dismiss 12 n.9.) In any event, because no conflict exists between Arizona and New Jersey law, Bridgewater Wholesalers, Inc. v. Penn. Lumbermens Mut. Ins. Co., No. 14-3684, 2015 WL 3448120, at *3 (D.N.J. May 29, 2015) ("If no conflict exists, the law of the forum state applies."), the court shall apply New Jersey law. See Snyder v. HSBC Bank USA, N.A., 913 F. Supp. 2d 755 (D. Ariz. 2012) (To prove a breach of contract claim under Arizona law, "a plaintiff must allege the existence of a contract between the plaintiff and defendant, a breach of the contract by the defendant, and resulting damage to the plaintiff." (citing Warren v. Sierra Pacific Mortg. Servs. Inc., No. 10-2095, 2011 WL 1526957, at *3 (D. Ariz. April 22, 2011)); see also USLife Title Co. of Ariz. v. Gutkin, 732 P.2d 579, 584 (Ariz. Ct. App. 1986) ("It is the well established law

plaintiff must prove four elements: (1) the existence of a valid contract with the defendant; (2) that the defendant breached that contract; (3) the damages resulting from that breach; and (4) that plaintiff performed its obligations under the contract." Vonage Holdings Corp. v. Hartford Fire Ins. Co., No. 11-6187, 2012 WL 1067694, at *2 (D.N.J. Mar. 29, 2012). Defendants challenge the second element, contending that Plaintiff has failed to allege a breach of any obligation created under the RIA and Assignment Agreement. The Court agrees.

Plaintiff alleges that Defendants breached their obligation to make periodic payments pursuant to the settlement agreement when they failed to commence making those payments following ELNY's restructuring and liquidation. (Second Am. Compl. ¶¶ 32-38, 45-53.) The RIA entered into by and among Plaintiff, Cessna,[10] and Lloyd's creates an obligation on the

---

of Arizona that in order to prevail upon a theory of unjust enrichment, a plaintiff must establish that, (1) plaintiff conferred a benefit upon the defendant; (2) defendant's benefit is at plaintiff's expense; and (3) it would be unjust to allow defendant to keep the benefit."); Snyder v. Farnam Cos., Inc., 792 F. Supp. 2d 712, 723-24 (D.N.J. 2011) (same under New Jersey law).

[10] Plaintiff argues that the RIA did not release Cessna from liability to make periodic payments because the entity that actually entered into the RIA, "The Cessna Aircraft Company," either did not exist or has since ceased to exist. This argument ignores the clear language of the RIA, which releases "The Cessna Aircraft Company and its insurer, [Lloyd's] . . . **and all those related or that may be related to them** . . . ." (Id. at

part of Defendants to make a partial lump-sum payment of
$125,000.00, as well as periodic payments throughout Plaintiff's
lifetime. (Id. at Ex. A, p. 1.) That same RIA explains that
Cessna and Lloyd's "will assign their obligation for these
periodic payments to [FEC] as set forth in the Assignment
Agreement." (Id. at Ex. A, p. 2.) In exchange, Plaintiff agreed
to accept the assignment, as provided for in the Assignment
Agreement, in "full release of Cessna and [Lloyd's] with respect
to these periodic payments." (Id. (emphasis added).) Thus, under
the plain terms of the RIA, Cessna, and Lloyd's assumed an
obligation to make periodic payments to Plaintiff, but Plaintiff
simultaneously released them from this obligation upon
assignment to FEC. In other words, under the plain terms of the
RIA, Defendants' obligation to make periodic payments ceased
upon payment of $125,000.00, and the purchase of the annuity
from ELNY and subsequent assignment to FEC in accordance with
the Assignment Agreement.

   The Assignment Agreement, on which Plaintiff was listed as
a signatory, further confirms that any and all liability to make
the periodic payments is assumed by FEC and that Lloyd's is

---

Ex. A, p. 1 (emphasis added).) Moreover, according to
Plaintiff's own Complaint, The Cessna Aircraft Company, which
was in existence on the date of the accident, merged with Cessna
on March 3, 1986, prior to the date on which the parties entered
into the settlement agreement. (See id. at ¶¶ 5, 15.)

"fully released from its liability to make all periodic payments." (Id. at Ex. A, p. 6.) Indeed, Plaintiff alleges that "Cessna had an obligation to make a settlement payment and properly purchase an annuity contract **to assume its obligation to make certain scheduled payments** pursuant to a properly executed assignment." (Id. at ¶ 17 (emphasis added).)[11] Thus, the terms of the RIA and Assignment Agreement attached to Plaintiff's Second Amended Complaint clearly reflect the parties' intention to release Defendants from any obligation to make periodic payments to Plaintiff, upon the purchase[12] and assignment of the annuity.

Recognizing that the purchase of the annuity and the valid assignment of the obligation to make periodic payments (coupled

---

[11] See also Pl.'s Opp'n to Cessna's Mot. to Dismiss 5 (Cessna "remained ultimately responsibility [sic] for the payments absent a valid assignment of that obligation.").

[12] Although Plaintiff also alleges a breach of the agreement based upon the failure to properly purchase the annuity (see id. at ¶¶ 36, 50), such allegations are flatly contradicted by Plaintiff's other allegations. For example, Plaintiff avers that "[a]n annuity was purchased from ELNY to fund the structured settlement payments . . . ." (id. at ¶ 16), as was required by the terms of the RIA to which Plaintiff expressly agreed, with the apparent advice of counsel (see id. at Ex. A, p. 1 ("Cessna and [Lloyd's] . . . agree to purchase an annuity from [ELNY] . . . .")). Plaintiff further alleges that "ELNY . . . met its structured settlement payment obligations to Plaintiff up to and until the insurance company's ultimate restructure and liquidation, which occurred on August 8, 2013" – over 27 years later. (See, e.g., id. at ¶ 2.) As such, Plaintiff fails to adequately state a claim based on these allegations.

with Plaintiff's receipt of the $125,000.00 lump-sum payment)
satisfies Defendants' obligations pursuant to the RIA and
Assignment Agreement, Plaintiff attempts to allege that
Defendants breached the settlement agreement by failing to
properly assign the annuity to an appropriate and solvent
entity. (See, e.g., Second Am. Compl. ¶¶ 36, 50.) Essentially,
Plaintiff asserts that because the assignment to FEC was
defective, Defendants remain obligated to make the periodic
payments. (See id. at ¶¶ 32-38, 45-53.) As noted above, the RIA
set forth the parties' understanding and agreement (with the
apparent advice of counsel) that Cessna and Lloyd's "will assign
their obligation for these periodic payments to [FEC] as set
forth in the Assignment Agreement." (See id. at Ex. A, pp. 2,
4.) The Assignment Agreement, in turn, provided that FEC would
assume liability for the periodic payments in exchange for a
premium payment made by Lloyd's, and in return for this
assignment, Plaintiff agreed that Defendants would be "fully
released from [their] liability to make all periodic payments."
(Id. at Ex. A, p. 6.) Notably, both the RIA and Assignment
Agreement list Plaintiff as a signatory, and establish that the
annuity would be assigned to FEC. (See id. at Ex. A.)

Plaintiff contends that the assignment and resulting
release of liability is invalid because FEC is identified in the
Assignment Agreement as "a California corporation" when, in

reality, it is a Delaware corporation. (Id. at ¶¶ 18-20.) Thus, Plaintiff argues the FEC entity listed in the Assignment Agreement does not exist. (Id. at ¶ 19.) Defendant Lloyd's contends, however, that identification of FEC as a California corporation, rather than a Delaware corporation, was merely a mistake and is immaterial. The Court agrees. Plaintiff does not allege that Lloyd's failed to assign the annuity to FEC in accordance with its obligation under the settlement agreement, or that FEC failed to accept the assignment.[13] Indeed, Plaintiff asserts that FEC was renamed First Lincoln Holdings, Inc., which was subsequently renamed First Lincoln (also a named defendant), but that "**[e]ach surviving entity assumed the liabilities of FEC, including the obligations under the settlement and/or by**

---

[13] Despite Plaintiff's contention that this misidentification renders the identity of the intended assignee "ambiguous," no such ambiguity is alleged. See Thornton v. Hubill, Inc., 571 N.W.2d 30, 33 (Iowa App. 1997); see also Hedlund v. Ford Mktg. Corp., 629 P.2d 1012, 1015 (Ariz. Ct. App. 1981) ("We conclude, under the facts here, that there was neither a change of parties nor a misnomer. There was only one Ford Motor Company and one Ford Marketing Corporation. A mistake in its place of incorporation was of no consequence. To hold otherwise would be the height of exalting form over substance."); Hoboken Bldg. Ass'n v. Martin, 13 N.J. Eq. 427, 427 (Ch. 1861) ("A contract is not void because the corporation with which it is made is misnamed therein."); 6 Fletcher Cyc. Corp. § 2444 ("the misnomer of a corporation generally will not be treated by the courts as material if the identity of the corporation is reasonably clear or can be ascertained by sufficient evidence. . . . The omission, addition or misdescription of a geographical phrase has been regarded as unimportant.").

**reason of its ownership of Plaintiff's annuity contract.**"
(Second Am. Compl. ¶ 21 (emphasis added); see also id. at ¶ 22
("First Lincoln is believed to be the current owner of
Plaintiff's annuity contract . . . .").) Moreover, the letter
Plaintiff received from GABC, and attached to his Second Amended
Complaint, identifies FEC as the annuity's owner. (See id. at
Ex. B, p. 1.) As such, Plaintiff fails to allege that this
purported mistake in FEC's place of incorporation renders the
assignment and contemporaneous release of liability invalid or
unenforceable. See Ctr. 48 Ltd. P'ship v. May Dep't Stores Co.,
810 A.2d 610, 623 (N.J. Super. Ct. App. Div. 2002) (noting a
unilateral mistake of fact is not grounds for avoidance of a
contract unless the mistake relates to a material feature and is
"so great a consequence that it would be unconscionable to
enforce the contract"). In any event, Plaintiff received
periodic payments from the annuity for 27 years. As Plaintiff
accepted these annuity payments without complaint, this Court
would be hard-pressed to find such mistake material and
sufficient to render the assignment unenforceable.

In a similar action against FEC and its successor
companies, the court addressed the same alleged mistaken
identification of FEC's place of incorporation in an assignment
contract. Thornton, 571 N.W.2d at 33. There, the court concluded
that "Thornton also argues there is a material fact issue

18

regarding the assignee's identity. The settlement agreement indicates [FEC] [identified in the documents as a "California corporation"] accepted the assignment of liability, while Executive Life actually made payments to Thornton. . . . We find any resulting fact issue is not material." Id. Accordingly, the Iowa court affirmed the lower court's grant of summary judgment to the defendants on the annuity beneficiaries claims. Id. Although this matter was presented in a different procedural posture, this Court agrees with the Iowa court's reasoning.

Plaintiff also challenges the assignment to FEC on grounds that it was "grossly undercapitalized and insolvent for many years," including at the time of the 1986 settlement. (See Second Am. Compl. ¶ 20.) There are no allegations, however, that Defendants chose FEC knowing of its financial state. Rather, the RIA and Assignment Agreement reflect the parties' agreement (with the apparent advice of counsel) that the annuity was to be assigned to FEC. Nor does Plaintiff allege that FEC's financial struggles in the 1980's and 1990's caused the reduction in Plaintiff's payout under the annuity contract. (Cf. id. at ¶¶ 20-22 (alleging FEC had financial difficulties during these times, but averring that successor companies assumed FEC's obligations under the annuity).) Rather, Plaintiff received

payments throughout this time period.[14] These payments ultimately ceased causing Plaintiff's damage, only because of ELNY's 2013/2014 restructuring and liquidation – 27 years after the settlement and annuity purchase.

While Plaintiff argues that "the obligation to fund the periodic payments was *certainly* material to the contract as was the assignee's ability to perform that obligation" (Br. in Supp. of Pl.'s Opp'n to Lloyd's Mot. to Dismiss 4), it is unclear how that fact alters this Court's analysis. As Lloyd's notes, the settlement documents contain no representations or warranties as to FEC's financial stability at the time of the 1986 settlement, nor any requirement that Defendants evaluate FEC's credit risk. Thus, Plaintiff fails to adequately allege a breach of the settlement agreement based upon Defendants' assignment of their obligation to FEC.

As to Cessna, Plaintiff additionally alleges that Cessna remains liable for making periodic, lifetime payments to Plaintiff because only Lloyd's purported to assign to FEC its liability for making periodic payments. (See Second Am. Compl. ¶ 36.) Although the Assignment Agreement was entered into by and among Plaintiff, Lloyd's, and FEC, the RIA plainly states that

---

[14] Plaintiff alleges that FEC filed for bankruptcy protection in 1991 (Second Am. Compl. ¶ 20), yet Plaintiff waited 23 years to bring his claims – a fact relevant to Defendants' statute of limitations arguments.

the assignment was to occur "as set forth in the Assignment Agreement." (Id. at Ex. A, pp. 1-2.) The RIA further states that Plaintiff accepts this assignment "in full release of **Cessna and Lloyds** with respect to these periodic payments." (Id. (emphasis added).) Thus, the RIA contemplates a single assignment in accordance with the terms of the Assignment Agreement, which in turn set forth that Lloyd's would make the premium payment to FEC in exchange for FEC's assumption of liability. Upon completion of the Assignment Agreement, the RIA – to which Cessna appears to have been a party - released both Cessna and Lloyd's from further liability for making the periodic payments. (Id. at Ex. A.) Notably, both the RIA and Assignment Agreement were to be signed by Plaintiff.[15] (Id. at Ex. A, pp. 3, 7.)

The Court finds Thornton instructive on this issue as well. There, the settlement agreement similarly provided that "by reason of such assumption and assignment . . . [the defendants] are fully and completely released and forever discharged from their liability to make all periodic payments . . . ." 571 N.W.2d at 32. The plaintiff also signed an acceptance of annuity and assignee, thereby acknowledging assignment to FEC and

_____

[15] Moreover, to the extent that Plaintiff believed Cessna was required to be a signatory to the Assignment Agreement, it is unclear why he failed to object to the terms of the Assignment Agreement on or before the time he purportedly agreed to them.

21

agreeing to a release of liability. Id. The court determined
that "the unambiguous terms of the settlement agreement relieved
[the defendants] of all liability to make payments upon
assignment." Id. As this Court does, the Thornton court found it
notable that Plaintiff signed the acceptance of annuity contract
and assignee, and accepted payments from ELNY for nine years.
Id. Accordingly, it concluded that the terms of the settlement
agreement clearly and unambiguously released the defendants of
liability. This Court similarly concludes that the RIA and
Assignment Agreement clearly released Defendants from liability
upon assignment of the annuity to FEC. See Deficcio v. Winnebago
Indus., No. 11-872, 2011 WL 4594291, at *4-5 (D.N.J. Sept. 30,
2011) ("Where the terms of a contract are clear, a court 'must
enforce the unambiguous terms as written, and it has no power to
rewrite the contract of the parties by substituting a new or
different provision from what is clearly expressed in the
instrument.'").[16]

    In sum, the terms of the settlement agreement, as embodied
in the RIA and Assignment Agreement attached to Plaintiff's
Second Amended Complaint, clearly and unambiguously demonstrate

---

[16] See also Grosvenor Holdings, L.C. v. Figueroa, 218 P.3d
1045, 1050 (Ariz. Ct. App. Oct. 22, 2009) ("A general principle
of contract law is that when parties bind themselves by a lawful
contract, the terms of which are clear and unambiguous, a court
must give effect to the contract as written.").

that Defendants fulfilled their contractual obligations by making a lump-sum payment, purchasing an annuity from ELNY, and assigning it to FEC. Under the terms of the settlement agreement, therefore, Plaintiff fully released Defendants from liability. While Plaintiff argues that Defendants' assignment of their obligation to FEC was invalid, the Court rejects Plaintiff's arguments as immaterial and inconsistent with the terms of the RIA and Assignment Agreement. Accordingly, Plaintiff fails to sufficiently plead a breach of the settlement agreement and his breach of contract claims against Cessna and Lloyd's are dismissed.

### B. Unjust Enrichment

Defendants also move to dismiss Plaintiff's alternative claims for unjust enrichment, arguing that (1) a claim for unjust enrichment cannot be maintained where a contract governs the parties' rights; (2) Plaintiff fails to plead adequately that Defendants received a benefit to the detriment of Plaintiff upon the reduction of Plaintiff's payout in 2013; and (3) Plaintiff released any claim he may have had.

As an initial matter, "in New Jersey, an unjust enrichment claim will not lie when there is an express contract governing the rights and obligations of the parties." Schweikert v. Baxter Healthcare Corp., No. 12-5876, 2013 WL 1966114, at *6 (D.N.J.

23

May 10, 2013).[17] Plaintiff correctly notes, however, that Federal Rule of Civil Procedure 8(d)(2) permits a party to plead alternative claims, "and courts in this district, including this Court, regularly have refused to dismiss an adequately pled quasi-contract claim even when a express contract is alleged to govern the parties' relationship." Id. Thus, it is not improper for Plaintiff to bring an unjust enrichment claim in the alternative.

Here, however, while Plaintiff styles Count IV as an unjust enrichment claim, the allegations reveal that it is actually another breach of contract claim, asserting a valid and enforceable contract with different terms than those set forth in the unexecuted settlement documents that form the basis of the breach of contract claims in Counts I and III.[18] In this

---

[17] See also USLife Title, 732 P.2d at 584 ("For instance, our courts have repeatedly held that the existence of a contract specifically governing the rights and obligations of each party precludes recovery for unjust enrichment [under Arizona law].").

[18] Even if the Second Amended Complaint could be read to assert a claim for unjust enrichment, that claim fails. To maintain a claim for unjust enrichment, as a matter of law in New Jersey, "a plaintiff must allege that (1) at plaintiff's expense (2) defendant received benefit (3) under circumstances that would make it unjust for defendant to retain benefit without paying for it." Snyder, 792 F. Supp. 2d at 723-24; see also USLife Title, 732 P.2d at 584 (same elements under Arizona law). Not only must the defendant have received the benefit, but the defendant also must not have paid for it. Snyder, 792 F. Supp. 2d at 723-24. The benefit that Defendants allegedly received consists of a release of Plaintiff's claims arising out of his injuries. The Second Amended Complaint alleges, however, that Defendants made a lump-sum payment of $125,000.00, and

count, Plaintiff alleges that "[o]n or about April 1, 1986, Plaintiff, Cessna, and the [Insurers] **entered into a settlement agreement whereby Cessna and the [Insurers] agreed** to make a payment of $125,000 and periodic payments as required under the structured settlement to Plaintiff in release of his personal injury claims against The Cessna Aircraft Company, Cessna, and/or the [Insurers]." (<u>Id.</u> at ¶ 55 (emphasis added).) Plaintiff further alleges that the release constitutes a valuable benefit conferred upon Defendants, such that retention without compensation would be inequitable. (<u>Id.</u> at ¶ 56.) In other words, the parties entered into a valid and enforceable settlement agreement, pursuant to which Defendants agreed to (a) make a partial lump-sum payment to Plaintiff and (b) make periodic payments throughout Plaintiff's lifetime, in exchange for which (c) Plaintiff released his then-pending personal injury claims. Defendants, however, allegedly breached that agreement by failing to make the periodic payments.

---

purchased an annuity from ELNY that has been making periodic payments to Plaintiff for over 27 years. (Second Am. Compl. ¶¶ 13, 29, 56.) Plaintiff, with the apparent advice of counsel, chose to enter into a structured settlement with only a partial lump-sum payment, rather than to receive a single, presumably larger, lump-sum payment. Moreover, ELNY's liquidation and subsequent re-valuation of Plaintiff's annuity are not alleged to have occurred because of the actions of either Defendant. As such, Plaintiff fails to allege that Defendants received any benefit to Plaintiff's detriment, and thus fails to state a claim for unjust enrichment.

Notably absent from the purported contract explained in this
count is any express agreement that the obligation to make
periodic payments would be assigned to FEC in exchange for a
full release of Plaintiff's claims against Defendants. (Compare
id. at Ex. A, pp. 6-7.) But, this latter agreement regarding the
assignment and resulting release is contained in the settlement
documents that Plaintiff alleges at least partially embody the
parties' settlement agreement (see id. at ¶¶ 2, 16-18 & Ex. A,
pp. 1-2), and as addressed above the RIA and Assignment
Agreement are fatal to Plaintiff's breach of contract claims.[19]
See Creelgroup, Inc., 518 F. App'x at 347 ("When a written
instrument contradicts allegations in the complaint to which it
is attached, the exhibit trumps the allegations."). Accordingly,
this claim must also be dismissed.[20]

---

[19] It appears Plaintiff is attempting to assert in Counts I
and III that the unexecuted RIA and Assignment Agreement reflect
the terms of the parties' settlement, but then in Count IV
preserve his ability to maintain that those documents do not
accurately reflect the terms of the settlement agreement. This
he cannot do. See, e.g., White v. Hon Co., 520 F. App'x 93, 95
(3d Cir. 2013) ("White may not attempt to use discovery as a
fishing expedition to determine the existence of a warranty
covering future performance and to seek out the facts necessary
to establish a legally adequate complaint."). As noted above,
should Plaintiff have a good faith belief that the terms of the
unexecuted settlement documents do not in fact represent the
parties' agreement, then he must set forth such good faith
allegation in any amended complaint he seeks leave to file.

[20] See Donnelly v. Option One Mortg. Corp., No. 11-7019,
2014 WL 1266209, at *14 (D.N.J. March 26, 2014) ("Under New
Jersey law, Plaintiffs must plead that the Defendants were
enriched in a manner not governed by any enforceable

## C. Statute of Limitations

Finally, even if Plaintiff had adequately pled his breach of contract claims, they are barred by the applicable six-year statute of limitations. See N.J.S.A. § 2A:14-1; Angera v. Angera, No. 14-CV-01253-SDW, 2014 WL 4988406, at *4 (D.N.J. Oct. 6, 2014) (holding that breach of contract claims must be brought within six years from the date on which the claim accrues).[21] A breach of contract claim accrues when "the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim." Labeau v. Rentzis, No. 08-6300, 2010 WL 2521764, at *2 (D.N.J. June 14, 2010) (quoting Lopez v. Swyer, 300 A.2d 563 (1973)).[22] Plaintiff contends that his claims

---

contract."); Century Indem. Co. v. URS Corp., No. 08-5006, 2009 WL 2446990, at *5 (E.D. Pa. Aug. 7, 2009) ("Because of the quasi-contractual nature of an unjust enrichment claim, the doctrine does not apply 'when the relationship between the parties is founded on a written agreement or express contract.' . . . Indeed, '[d]ismissal of an unjust enrichment claim is appropriate upon a motion to dismiss when the relationship between the parties is founded on a written instrument.'" (citations omitted)).

[21] See also Cameron v. Martucci, No. 1 CA-CV 11-0436, 2012 WL 2499691, at *2-3 (Ariz. Ct. App. June 28, 2012) ("The statute of limitations for breach of a written contract is six years." (citing A.R.S. § 12-548))

[22] Although Plaintiff appears to agree that the applicable statute of limitations is the six-year statute of limitations under New Jersey law, the parties did not address any choice of law questions. Accordingly, to the extent either party objects to the application of New Jersey law to Plaintiff's claims, they should move to have this Court reconsider the issue and set

accrued in August 2013, when ELNY reduced Plaintiff's total payout and Defendants failed to cover the difference as is allegedly required under the settlement agreement. Plaintiff thus attempts to circumvent the statute of limitations bar by framing his breach of contract action as a breach of the obligation to make periodic payments. This he cannot do.

Under the clear terms of the settlement agreement, as embodied in the documents Plaintiff attached to his Second Amended Complaint (see Second Am. Compl. ¶ 13 & Ex. A), Plaintiff released Defendants from any obligation to make the periodic payments upon Defendants' assignment of that obligation to FEC. See discussion supra. Plaintiff's theory as to why Defendants remain liable for making the periodic payments is therefore based upon his allegation that Defendants failed to properly assign their obligation to FEC in 1986 – more than 27 years ago. In essence, Plaintiff contends that a breach of the settlement agreement in 1986 resulted in a continuing obligation to make periodic payments to Plaintiff, an obligation Defendants breached in 2013 when they failed to cover the amount by which Plaintiff's scheduled payments were reduced in the ELNY liquidation. So Plaintiff's argument goes, because Defendants breached the settlement agreement in 2013, and Plaintiff filed

forth the applicable choice-of-law analysis. See Local Civ. R. 7.1.

suit in 2014, the statute of limitations does not bar his claims.

The Court finds that the appropriate focus for purposes of the statute of limitations analysis in this matter is Defendants' alleged 1986 breach of the settlement agreement. To hold otherwise would undermine the purpose of the statute of limitations by permitting a plaintiff to sit on his rights unless and until he determines to pursue them, and would keep defendants on the hook in perpetuity. See R.C. Beeson, Inc. v. Coca Cola Co., No. 07-4806, 2008 WL 4447106, at *5 (D.N.J. Sept. 26, 2008) ("Generally, the purpose of a statute of limitations is to weed out stale claims where the reliability of the evidence becomes suspect. According to the Supreme Court, such statutes are: designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." (citations omitted)).

Plaintiff does not allege that he could not have known in 1986, even through the exercise of reasonable diligence, that Defendants failed to properly assign their obligations to FEC.

Moreover, because Plaintiff was listed as a signatory to the Assignment Agreement, the Court is hard-pressed to see how Plaintiff could not have known of the circumstances underlying the allegedly improper assignment at the time of settlement. Accordingly, the claims are barred by the six-year statute of limitations.[23]

**IV.   Conclusion**

For the reasons set forth above, the Court finds that, even drawing all reasonable inferences in Plaintiffs' favor, as this Court must on a motion to dismiss, Plaintiff fails to adequately plead claims against Cessna and Lloyd's for breach of contract and unjust enrichment. Therefore, Cessna and Lloyd's motions to dismiss Counts I, III, and IV of the Second Amended Complaint are granted and these parties are hereby dismissed from this action.

Date: June 25, 2015

s/Renée Marie Bumb
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE

---

[23] Although Cessna initially argued that this matter should also be dismissed for lack of venue under 28 U.S.C. § 1391 as there is no substantial nexus between New Jersey and the allegations of the Second Amended Complaint, it has withdrawn this argument (see Cessna Reply 1).