[Dkt. No. 39]

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| ERIC NELS YERKES,<br><br>    Plaintiff,<br><br>        v.<br><br>CESSNA AIRCRAFT CO., et al.,<br><br>    Defendants. | Civil No. 14-5925<br><br>**OPINION** |

Appearances:

Melissa A. Bozeman
Oliver D. Griffin
Kutak Rock LLP
Two Liberty Place
50 S. 16th St., Suite 28B
Philadelphia, PA 19102
    *Attorneys for Plaintiff*

Jeffrey W. Moryan
Susan Kwiatkowski
Connell Foley LLP
85 Livingston Ave.
Roseland, NJ 07068
    *Attorneys for Defendant Cessna*
    *Aircraft Company*

Michael J. Miles
Brown & Connery, LLP
360 Haddon Ave.
Westmont, NJ 08108

Joseph L. Ruby
Lewis Baach PLLC
1899 Pennsylvania Ave., NW
Suite 600
Washington, DC 20006
    *Attorneys for Defendants Certain*
    *Underwriters at Lloyd's, London*

**BUMB**, UNITED STATES DISTRICT JUDGE:

This matter comes before the Court upon a motion seeking leave to file an amended complaint. Plaintiff Eric Nels Yerkes (the "Plaintiff") filed a complaint on September 23, 2014 in this Court against among others, Cessna Aircraft Company ("Cessna"), Underwriters at Lloyd's of London and First Lincoln Holdings, LLC. [Dkt. No. 1.] The complaint contained four claims for breach of contract and a single claim for unjust enrichment. (Id.) After two amendments, this Court dismissed the Second Amended Complaint on June 25, 2015. Now, Plaintiff seeks leave to file a third amended complaint against Cessna, FL Assignments Corp.,[1] and the Insurers.[2] The Court addresses that motion below. (Mot. to Am. Ex. 1 (Proposed Third Amended Complaint (hereinafter "Prop. TAC at ___").)

I.   **BACKGROUND**

Plaintiff's Proposed Third Amended Complaint operates on the same core facts as his previously dismissed claims, which are summarized below, and borrowed largely from this Court's

---

[1] FL Assignments Corp. ("FL Assignments") assumed all rights and obligations of FEC, the parent company of ELNY. (Prop. TAC at ¶ 52.) As such, FL Assginments is the current owner of Plaintiff's annuity. (See infra at 18.) Plaintiff mistakenly named another entity as the owner of the annuity in its previous complaints.

[2] Plaintiff also names as defendants 100 anonymous "London Market Companies." (See Prop. TAC.)

2

previous statement of the facts with regard to the prior motion to dismiss.

On August 18, 1981, Plaintiff sustained severe and permanent injuries in a plane crash that occurred near the Grand Canyon in Arizona. (Prop. TAC at ¶¶ 1, 13.) The plane in which Plaintiff was injured was manufactured by Cessna, whose insurance policy was underwritten by certain "companies participating in the London insurance market," including Lloyd's (collectively, Cessna's "Insurers"). (See id. at ¶¶ 7, 13.) Following the plane crash, Plaintiff filed suit against Cessna and its Insurers in Arizona federal court. (Id. at ¶ 1.) The parties resolved that suit by entering into a settlement agreement, the terms of which were embodied in a Release and Indemnity Agreement ("RIA"), as well as an Assignment Agreement, both of which are alleged by Plaintiff to be dated April 1, 1986. (Id. at ¶ 13.) Under the settlement agreement, Plaintiff was to receive a $125,000.00 lump-sum payout, as well as periodic payments throughout his lifetime, which were to be funded by an annuity carrying an ultimate value in excess of $6,000,000.00. (Id. at ¶¶ 13-14.) The annuity was to be purchased from Executive Life Insurance Company of New York ("ELNY") and assigned to First Executive Corporation ("FEC"). (See id. at Ex. A.) Plaintiff has attached unexecuted and undated copies of the RIA and Assignment Agreement to his

3

Proposed Third Amended Complaint, but Plaintiff avers that these documents evidence the settlement agreement. (See id. at ¶ 13 & Ex. A.)

Specifically, the RIA provides that:

> In consideration of payment of $125,000.00 cash, receipt of which is acknowledged by [Plaintiff], and payment of periodic sums, [Plaintiff] releases [Cessna] and its [Insurers], and all those related or that may be related to them, from all claims, demands and causes of action, known or unknown, arising out of a Grand Canyon Airlines plane crash occurring August 18, 1981.
> In consideration for this Release and an Assignment Agreement, Cessna and [Lloyd's], in addition to payment of $125,000.00, agree to purchase an annuity from [ELNY] to fulfill their obligation to provide . . . periodic payments [to Plaintiff] . . . .
> . . .
> It is also understood and agreed that [Cessna] and [Lloyd's] will assign their obligation for these periodic payments to First Executive Corporation as set forth in the Assignment Agreement. This assignment is accepted by [Plaintiff] . . . **in full release of Cessna and [Lloyd's]** with respect to these periodic payments. [Plaintiff] acknowledges that once this assignment is made Cessna and [Lloyd's] are released from the obligation to make such payments.

(Prop. TAC Ex. A 1-2 (emphasis added).)

Attached, and incorporated by reference, to the RIA is the Assignment Agreement, which states:

> In consideration of payment of a premium payment by [Cessna's Insurers], ("Assignor") to [FEC], a California Corporation ("Assignee"), Assignee assumes, and Assignor assigns to Assignee, the liability of Assignor to make periodic payments in the amounts and at the times set forth in the Schedule of Payments attached as Exhibit A, to [Plaintiff] . . . .
> [Plaintiff] agrees that, by reason of such assumption

4

>and assignment, [Cessna's Insurers are] fully released from [their] liability to make all periodic payments.

(Id. at Ex. A, p. 6.) The Assignment Agreement purports to be a "qualified assignment" under Section 130(c) of the Internal Revenue Code. (See id. at ¶ 20 & Ex. A, p. 6.)

Plaintiff alleges that Cessna and/or its Insurers purchased an annuity from ELNY. (Id. at ¶ 17.) Plaintiff received structured settlement payments pursuant to this annuity apparently from March 15, 1986 until August 8, 2013 (totaling at least $788,000 by this Court's calculation),[3] when ELNY underwent a restructuring and liquidation process. (Id. at ¶ 2; see also id. at ¶ 23.) ELNY's remaining assets were transferred to Guaranty Association Benefits Company ("GABC"), which has been responsible for managing assets and making payments on behalf of ELNY. (Id. at ¶¶ 61-62.) On October 13, 2014, GABC sent a letter to Plaintiff's New Jersey residence informing him that, due to the liquidation and restructuring of ELNY, Plaintiff's total payout on the annuity owned by FEC would be reduced by 43.54%, bringing Plaintiff's total future payout to $2,394,700. (See id. at ¶ 67 & Ex. D, p. 1.)

Plaintiff traces this poor performance back to Cessna and the Insurers. Plaintiff alleges that Cessna and the Insurers

---

[3] This amount is based upon the terms of the RIA but does not include the $125,000.00 lump sum payment that Plaintiff alleges he also received.

5

failed to disclose to Plaintiff one or more of the following factors concerning the annuity that would be purchased:

- The "present value" of the proposed annuity payments;

- The discount rate used to calculate a "present value" of the proposed annuity payments;

- The actual cost to purchase the annuity;

- The existence of any rebates or affiliations with the issuer/broker, if any, affecting the purchase price of the annuity;

- The designated internal rate of return of the annuity with underlying assumptions;

- The mortality table valuations used for the annuity;

- Plaintiff's "rated age" or "impaired risk rating"; and

- Insolvency risks associated with the assignee and issuer, which were known or should have been known to Cessna and/or the London Market Insurers at the time of purchase.

(Id. at ¶ 19.)

Furthermore, Plaintiff alleges that information about ELNY, and its parent company FEC, was known and available to Cessna and the Insurers from various sources. (Id. at ¶ 27.) Plaintiff alleges that by way of such information, it could be known that ELNY's financial situation was unstable. Plaintiff points to the "primary (albeit, counterintuitive)" indicator: ELNY's rapid growth which outpaced industry averages. (Id. at ¶ 28.) Plaintiff alleges that this rapid growth, without a serious depletion of ELNY's reported surplus or net worth should

6

have been a "red flag" to Cessna or the Insurers. (Id. at ¶ 30.)

Due to its poor financial condition, Plaintiff next alleges that to cover the high rates paid to policyholders and maintain perceived profitability, "ELNY and FEC began to invest heavily in high-risk assets called 'junk bonds.'" (Id. at ¶ 34.) ELNY also reduced policy reserves on its balance sheets through "bogus reinsurance transactions and received from its parent holding company, FEC, millions of dollars of surplus infusions and loans." (Id. at 35.) Plaintiff also points to many other media and industry reports that Plaintiff alleges would have shown the financial insolvency of ELNY. (Id. at ¶¶ 38-39.)

Plaintiff alleges that in exchange for releasing his claims against Cessna and the Insurers, a "special relationship" between Plaintiff on the one hand and Cessna and the Insurers on the other hand arose, and that those parties also owed him fiduciary duties. (Id. at ¶ 22.) Plaintiff claims that by failing to recognize the significant risk the precarious financial condition of the annuity placed Plaintiff's annuity in, Cessna and the Insurers failed to act with reasonable care and breached the implied covenant of good faith and fair dealing. As such, Plaintiff brings claims for: (1) negligence and negligence *per se* against Cessna and the Insurers (counts I and II, respectively); (2) bad faith breach of the covenant of

7

good faith and fair dealing against the Insurers (count III); and (3) breach of contract against FL Assignments Corporation.

## II. LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a motion for leave to amend should is governed under Rule 15(a), which states in relevant part:

> A party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier. . . . In all other cases a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires.

Fed. R. Civ. P. 15(a)(2); see also Wolf v. PRD Mgmt., Inc., Civ. No. 11-2736 (RMB/JS), 2012 WL 1623849, at *2 (D.N.J. May 8, 2012) (citing Fed. R. Civ. P. 15(a)(2)).

"[T]he grant or denial of an opportunity to amend is within the discretion of the District Court." Foman v. Davis, 371 U.S. 178, 182 (1962). Leave to amend generally is "freely given." Lake v. Arnold, 232 F.3d 360, 373 (3d Cir. 2000) (quoting Foman, 371 U.S. at 182). However, a district court has discretion to deny leave to amend "if it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." Id.

"Amendment would be futile if the amended complaint would not survive a motion to dismiss for failure to state a claim." Budhun v. Reading Hosp. & Med. Ctr., 765 F.3d 245, 259 (3d Cir. 2014) (citing Travelers Indem. Co. v. Dammann & Co., 594 F.3d 238, 243 (3d Cir. 2010)). Therefore, in determining whether an amendment is futile, this Court must apply "the same standard of legal sufficiency as applies under Federal Rule of Civil Procedure 12(b)(6)." Travelers, 594 F.3d at 243 (internal quotations and modifications omitted) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997)). Therefore, Plaintiff's motion to amend should only be granted if the Proposed Third Amended Complaint "contain[s] sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); accord Budhun, 765 F.3d at 259.

### III. ANALYSIS

Plaintiff's Proposed Third Amended Complaint brings claims based upon two theories of negligence, breach of the covenant of good faith and fair dealing, and breach of contract. The Court addresses each of these proposed causes of action below.

#### A. Neglgience Theories

Looking first to Plaintiff's proposed claim for negligence, the Court determines that Plaintiff has not stated a cause of

9

action, and therefore this portion of the amendment is deemed futile.

Plaintiff brings this cause of action against Cessna and the Insurers, (Prop. TAC at p. 18), alleging:

> In releasing his tort claims against Cessna and [the Insurers], Plaintiff reasonably expected that the annuity Cessna and [the Insurers] promised to purchase would be, among other things: (a) a fair and transparent reflection of the actual value of the settlement reached; (b) purchased for his express benefit and well-suited to meet his future personal needs; (c) competitively priced to maximize settlement value; (d) tax-advantageous; (e) a restraint on any premature dissipation or reduction of his personal-injury recoveries; (f) a guarantee that the periodic payments would be paid in full when they became due; and (g) selected by Cessna and the London Market Insurers only after a reasonable and careful investigation and analysis of the annuity market based upon all available information.

(Prop. TAC at ¶ 71.)

Plaintiff also alleges the existence of a "special relationship" between himself and Cessna and the Insurers which created a legal duty to use due care in selecting the annuity issuer and assignee. (Prop. Tac at ¶¶ 71-72, 74.) Plaintiff alleges this duty was breached when Cessna and the Insurers failed to:

- Disclose or properly evaluate the actual cost of the annuity;
- Disclose or properly evaluate the long-term security of the annuity;

10

- Disclose or properly evaluate whether the annuity was adequately designed to ensure maximum compensation to Plaintiff;

- Disclose or properly evaluate whether a structured settlement was appropriate under the circumstances; and

- Properly design a structured settlement plan for Plaintiff.

(Prop. TAC at ¶ 75.)

In order to state a claim for negligence, it must be alleged that: (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached that duty of care, (3) that the defendant's breach of that duty of care was the proximate cause of the plaintiff's injury, and (4) the plaintiff must prove actual damages. Weinberg v. Dinger, 106 N.J. 469, 484-85 (1987) (citation omitted).  Central to this analysis is the determination that "defendants . . . owe plaintiff a duty." Kernan v. One Wash. Park Urban Renewal Assocs., 154 N.J. 437, 445 (1998).  When determining whether a duty exists, "ultimately is a question of fairness," which "involves a weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solution." Weinberg, 106 N.J. at 485.  The existence of a duty is "quintessentially a question of law for the court." Highlands Ins. Co. v. Hobbs Grp., LLC, 373 F.3d 347, 351 (3d Cir. 2004).

Plaintiff's conceptualized duty revolves around the duty of Cessna and the Insurers to disclose to Plaintiff information

concerning the nature of the annuity.  Plaintiff contends that he released his claims against those parties in return for the promises of guaranteed future payments as described in the settlement agreement.  (Prop. TAC at ¶ 22.)  A duty to disclose arises in three situations: (1) a fiduciary relationship, such as the principal/agent relationship or attorney/client relationship; (2) "a situation in which one or each of the parties enters the transaction expressly has a trust and confidence in the other or such a trust and confidence is necessarily implied because of the circumstances of the case, the nature of their dealings, or their position towards each other;" and (3) "contracts or transactions which are intrinsically fiduciary by nature and necessarily call for perfect good faith and full disclosure, without regard to the intention of the parties."  Bonnieview Homeowners Ass'n v. Woodmont Builders, L.L.C., 655 F. Supp. 2d 473, 512 (D.N.J. 2009).

    Plaintiff has not plead any facts which bring the case as it now stands into the ambit of the above-listed duties to disclose.  Plaintiff, represented by counsel, entered into an arm's-length settlement transaction.  (Prop. TAC at ¶ 1, Ex. A at p. 3.)  It would be a strange result, indeed, to rule that parties negotiating against each other as part of a litigation, (Prop. TAC at ¶ 1), owe each other a duty of disclosure.  This

12

is consistent with rulings touching upon similar situations. In Graddy v. Deutsche Bank, Civ. No. 11-3038 (RBK/KMW), 2013 WL 1222655 (D.N.J. Mar. 25, 2013), a court in this District held that for purposes of a negligence claim, parties negotiating a loan at arm's-length do not act as fiduciaries for the opposite side. Id. at *3. Likewise in United Jersey Bank v. Kensey, 306 N.J. Super. 540 (App. Div. 1997), the court ruled that, "It would be anomalous to require a lender to act as a fiduciary for interests on the opposite side of the negotiating table, because their respective positions are essentially adversarial. Id. at 553 (quoting Paradise Hotel Corp. v. Bank of Nova Socita, 842 F.2d 47, 53 (3d Cir. 1988)). The only difference here is that the relationship was not a lender/borrower relationship which is "essentially adversarial," but rather a Plaintiff/Defendant relationship which is explicitly adversarial. That posture also rules out the existence of a duty to disclose predicated upon the second and third situation in which a duty arises.

    Plaintiff's alleged "facts" supporting a "special relationship" do not change the outcome. The first fact, (Prop TAC at ¶ 72(a)), that "the purchase of the annuity . . . was intended to provide Plaintiff a life-time of reliable payments" is just a restatement of the definition of an annuity. The second "fact," (Prop. TAC at ¶ 72(b)), "the foreseeability of harm resulting from . . . [the Defendants'] selection of ELNY .

13

. . is a foregone conclusion," is a legal conclusion concerning the existence of a purported breach and proximate cause, not a fact creating a duty to disclose.  The third and fourth "facts," (Prop. TAC at ¶ 72(c)-(d)), are legal conclusions concerning the injury and causation elements of a negligence claim.  The final two "facts," (Prop. TAC at ¶ 72(e)-(f)), are conclusory public policy statements in favor of tort victims that are vague and do not create a relationship at the time of the alleged failure to disclose.[4]

Plaintiff's argument that a "special relationship" was formed pursuant to California Insurance Code § 332 also misses the mark with regard to negligence *per se*.  Even assuming Plaintiff is correct that the Assignment Agreement was made

---

[4] Plaintiff's analogy to insurance broker cases is also unavailing.  (See Pl.'s Rep. Br. at 10-11.)  These cases rely upon a notion, first elicited in Rider v. Lynch, 42 N.J. 465, 476 (1964), that an insurance broker's relationship with members of the public is similar to a principal/agent relationship.  That is fundamentally dissimilar from the relationship between parties negotiating a settlement agreement and therefore implicates fiduciary issues.
    The Court additionally finds Plaintiff's arguments based upon Massie v. U.S., 166 F.3d 1184 (Fed. Cir. 1999) are unavailing.  Massie dealt with a breach of contract action, not tort, and ultimately held that contractual interpretation suggested the government had guaranteed annuity payments in that particular contract, not that settling defendants are as a matter of law liable in a tort theory for annuity shortfall.  Massie v. U.S., 166 F.3d 1184, 1190 (Fed. Cir. 1999) ("Because the payments are mandatory, the government must be responsible for their payment; no one else is a party to the Agreement.")

pursuant to California law, the relevant portion of that code section states:

> Each party to a contract of insurance shall communicate to the other, in good faith, all facts within his knowledge which are which he believes to be material to the contract and as to which he makes no warranty, and which the other has not the means of ascertaining.

Cal. Ins. Code § 332.  The Release and Indemnification Agreement was not a "contract of insurance."  The contract by which the annuity was purchased is not included in the Complaint, and the Court cannot infer that Plaintiff was a party to that, either. (Prop. TAC at p. 7.)  This statute section is plainly inapplicable for purpose of a negligence claim.[5]

Given the adversarial relationship between these parties as the Release and Indemnification Agreement was reached, the Court does not find that a duty of disclosure or any other duty was owed by Cessna or the Insurers to Plaintiff.  The Court additionally finds that the California Insurance Code section offered by Plaintiff is inapplicable.  As such, Plaintiff's attempt to amend for purposes of alleging negligence and negligence *per se* claims is futile.[6]

---

[5] Moreover, even if the statute were applicable to the Assignment Agreement, Plaintiff has not sufficiently alleged that any party to that contract withheld facts within its knowledge that it knew would be material to the contract or that those facts were unavailable to Plaintiff.

[6] The Court does not reach the additional issues of causation or breach of any duty, although the Court is dubious

**B. <u>Breach of Covenant of Good Faith and Fair Dealing</u>**

Plaintiff also brings a claim for breach of the covenant of good faith and fair dealing against the Insurers. Plaintiff largely relies upon <u>Enyart v. Transamerica Insurance Co.</u>, 195 Ariz. 71 (Ct. of Appeals 1998) in making this argument. In <u>Enyart</u>, the court recognized a tort theory of recovery ("Tort of Bad Faith") stemming from the breach of an implied covenant in a contract. <u>Id.</u> at 76. Specifically, that tort provided that, with a showing of a "special relationship," a plaintiff can recover in tort for breaching an implied covenant of good faith and fair dealing. <u>Id.</u> In that case, after a settlement annuity failed, the Court held that "Were the current sources of payment to Enyart to fail, he could be left destitute, and the whole purpose of his settlement egregiously denied." <u>Id.</u> at 77.

<u>Enyart</u> is a decision from the Court of Appeals of Arizona, Division 1, Department E and is superficially similar to this case. In that case, the plaintiff was injured in an accident and the insurance company for the injuring party settled with the plaintiff by purchasing an annuity for him. <u>Id.</u> at 73-74. Nevertheless, the similarities end there. As a further guarantee that the structured settlement would provide payments

---

Plaintiff has sufficiently plead these elements as well. Additionally, the Court does not reach the issue of whether the economic loss doctrine would also prevent Plaintiff from recovering, as argued by Cessna and the Insurers.

to the plaintiff, the insurance company agreed to purchase a backup annuity policy, "in the unlikely event [the annuity company] becomes insolvent and unable to pay according to the terms of the annuity." Id. at 73.  The insurance company failed to actually purchase the backup annuity, which was an express violation of the contract.  Id.

Here, to the extent this Court could be persuaded of Enyart's applicability, Plaintiff has not stated an underlying breach of the contract with regard to the Insurers and has not alleged that the Insurers did anything but what the contract obligated them to do.  Plaintiff instead has alleged that the Insurers did exactly what the parties agreed they should purchase: purchase an annuity from ELNY.  (See Prop. TAC at Ex. A, p. 1.)  As the Insurers point out, "[t]here is no allegation that Lloyd's Underwriters purchased the annuity from ELNY and not from another provider in order to deprive Plaintiff of the benefit of his bargain."  (Insurers' Br. at 35.)

C. **Breach of Contract**

Plaintiff also seeks the Court's leave for purposes of amending to name FL Assignments Corp., which was the transferee of all rights and obligations of the parent company of ELNY, as a defendant in this action for purposes of a breach of contract action.  (Prop. TAC at ¶ 52, 57.)  The previous entity held out as the owner of the annuity contract, First Lincoln Holdings,

17

LLC, was mistakenly named on the Second Amended Complaint. (Pl.'s Rep. Br. at 2 n.4.)  Because Plaintiff's claim against the owner of the annuity was brought it the previous complaints, albeit against the incorrect owner, the Court will permit the Proposed Third Amended Complaint to be filed with regard to FL Assignments only.  In so doing, the Court does not pass on the merits of the claim against FL Assignments Corp.  The Court anticipates doing so once FL Assignments Corp. has been served and appears.

**IV.   CONCLUSION**

Plaintiff's motion to amend for purposes of asserting negligence and breach of the covenant of good faith and fair dealing against Cessna and the Insurers is **DENIED**.  Plaintiff's motion to amend for purposes of naming FL Assignments corporation is **GRANTED.**

s/Renée Marie Bumb  
RENÉE MARIE BUMB  
UNITED STATES DISTRICT JUDGE